**In re Esko Volevi NENONEN and Asta Elina Nenonen, Debtors.**

**Bank America Housing Services, etc., Appellant,**

v.

**Esko Volevi Nenonen and Asta Elina Nenonen, Appellees.**

**No. 98–1548–Civ–T–26A.**

United States District Court, M.D. Florida, Tampa Division.

Nov. 10, 1998.

---

Marshall Gary Reissman, Pritchard & Reissman, PA, Tampa, FL, for appellant.

James E. Keim, Tampa, FL, for appellees.

## *ORDER*

LAZZARA, District Judge.

The Appellant, BankAmerica Housing Services (BankAmerica), seeks reversal of the Bankruptcy Court's order confirming the Chapter 13 reorganization plan of the Appellees, Esko and Asta Nenonen (the Debtors). It primarily contends that in confirming the plan the Bankruptcy Court violated 11 U.S.C. § 1325(a)(5)(B)(ii) because the confirmation order permitted the Debtors to pay BankAmerica's secured claim over a period of twenty-two years rather than over the five-year life of the plan. The Court agrees with this contention and, accordingly, reverses the order of confirmation and remands this case to the Bankruptcy Court for further proceedings.[1]

The parties do not dispute the relevant facts. The Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code. During the course of the proceedings, they made a motion to value collateral so that the Bankruptcy Court could determine the secured status of BankAmerica's claim encumbering the Debtors' mobile home. After an evidentiary hearing, the Bankruptcy Court issued an order determining that the value of BankAmerica's secured claim was $47,000, with the balance of the claim, $15,145.86, being deemed as unsecured.[2] In due course, the Debtors filed their Third Amended Chapter 13 Plan in which they sought to pay BankAmerica's secured claim over five years with no interest.

At the confirmation hearing conducted by the Bankruptcy Court, BankAmerica objected to that part of the Debtors' plan which called for the payment of no interest on its secured claim. In the face of

1. In view of this Court's agreement with this argument, it does not need to reach the other issues BankAmerica raises in support of reversal.

2. The correctness of the Bankruptcy Court's determination as to valuation is not an issue in this appeal.

this objection, the Bankruptcy Court, on its own initiative, decided to extend the Debtors' payments over twenty-two years at the interest rate of 9.75% which was the rate fixed in the parties' contract. Both BankAmerica and the Debtors' Chapter 13 trustee objected to this arrangement because the payment plan fashioned by the Bankruptcy Court would extend beyond the five-year life of the plan. The Bankruptcy Court, after noting these objections, issued an order confirming the Debtors' plan as modified and later denied BankAmerica's Motion for Rehearing. This appeal ensued and presents for this Court's resolution the central issue of what is the meaning of "under the plan" as used in section 1325(a)(5)(B)(ii), which specifies that "(a) ... the court shall confirm a plan if—(5) with respect to each allowed secured claim provided for by the plan—(B)(ii) the value, as of the effective date of the plan, of property to be distributed *under the plan* on account of such claim is not less than the allowed amount of such claim." (Emphasis added.)

■ As the United States Supreme Court recently explained, in order for a plan's treatment of a secured claim to qualify for confirmation under Chapter 13 of the Bankruptcy Code, the plan must satisfy the requirements of section 1325(a)(5). *See Associates Commercial Corp. v. Rash*, —— U.S. ——, ——, 117 S.Ct. 1879, 1882, 138 L.Ed.2d 148 (1997). Under this provision, as the Court observed, "a plan's proposed treatment of secured claims can be confirmed if one of three conditions is satisfied." *Id.* First, the secured creditor has the option of accepting the plan pursuant to section 1325(a)(5)(A). *Id.* Second, the debtor has the option of surrendering the property securing the claim to the creditor under section 1325(a)(5)(C). *Id.* Finally, the debtor may invoke the so-called "cram down" provisions of section 1325(a)(5)(B).

*Id.* If the "cram down" option is chosen, then the debtor keeps the property over the creditor's objection and the creditor retains its lien. *Id.* In that event, however, section 1325(a)(5)(B)(ii) requires the debtor "to provide the creditor with payments, *over the life of the plan,* that will total the present value of the allowed secured claim, *i.e.,* the present value of the collateral." *Id.* at 1883 (emphasis added).[3]

■ It appears, therefore, that the United States Supreme Court, in analyzing the provisions of section 1325(a)(5)(B)(ii), has authoritatively construed the phrase "under the plan" to mean "over the life of the plan." The Debtors contend, however, that this language from *Rash* is not authoritative but is dicta which this Court is not bound to follow. The Court rejects this contention because, as the Eleventh Circuit recently noted, "dicta from the Supreme Court is not something to be lightly cast aside." *Peterson v. BMI Refractories,* 124 F.3d 1386, 1392 n. 4 (11th Cir. 1997); *see also United States v. City of Hialeah,* 140 F.3d 968, 974 (11th Cir.1998) (even though statement by Supreme Court was dictum, it is of considerable persuasive value). Furthermore, another court, relying on *Rash,* has similarly construed "under the plan" to mean "over the life of the plan." *See In re Milham,* 141 F.3d 420, 424 (2d Cir.1998).

Moreover, in *In re Barnes,* 32 F.3d 405 (9th Cir.1994), which was decided before the Supreme Court's decision in *Rash,* the Ninth Circuit faced a factual scenario nearly identical to the one confronting this Court. In that case, the bankruptcy court had confirmed a Chapter 13 plan which provided for payments to the secured creditor amortized over nineteen years. After concluding that the requirement of section 1325(a)(5)(B)(ii) is mandatory, the Court held, relying on 11 U.S.C. § 1922(c)

---

**3.** Under 11 U.S.C. § 1322(d), "[t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period longer than five years." Thus, the outer limits of payments under the cram down provisions of section 1325(a)(5)(B)(ii) is five years.

(1988),[4] that the bankruptcy court erred in confirming the plan because it provided for payments over a period exceeding five years. *Id.* at 408; *see also Landmark Fin. Serv. v. Hall*, 918 F.2d 1150, 1154 (4th Cir.1990) (one of the principal components of a § 1325 cram down is a provision for payment during the life of the plan, *i.e.*, 3–5 years of the full value of the secured claim), *abrogated on other grounds, Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

■ In light of this authority, this Court concludes that the Bankruptcy Court erred in confirming the Debtors' plan because the plan's provisions for payment of BankAmerica's secured claim exceeded the five-year life of the plan. Accordingly, the Bankruptcy Court's order confirming the Debtors' plan is reversed, this case is remanded to the Bankruptcy Court for further proceedings consistent with this order, and the Clerk is directed to close this case.

---

4. This statutory provision is now found at 11 U.S.C. § 1322(d) which is discussed in footnote 2.