[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**MAY 22, 2003**
**THOMAS  K. KAHN**
**CLERK**

—————————————————

No. 02-11221

—————————————————

D. C. Docket Nos. 00-00995-CV-KMM
96-17616-BKC-AJ


IN RE: CARMEN BATEMAN,


Debtor,

-----------------------------------

UNIVERSAL AMERICAN MORTGAGE COMPANY,

Plaintiff-Appellant,

versus

CARMEN BATEMAN,

Defendant-Appellee.


————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

**(May 22, 2003)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

BIRCH, Circuit Judge:

In this bankruptcy appeal, we decide that a secured creditor cannot collaterally attack a confirmed Chapter 13 plan, even though the plan conflicted with the mandatory provisions of the bankruptcy code, when the secured creditor failed to object to the plan's confirmation or appeal the confirmation order. We also hold that a secured creditor's claim for mortgage arrearage survives the confirmed plan to the extent it is not satisfied in full by payments under the plan, or otherwise satisfied under the terms § 1325(a)(5), because to permit otherwise would deny the effect of 11 U.S.C. § 1322(b)(2), which, in effect, prohibits modifications of secured claims for mortgages on a debtor's principal residence. The bankruptcy court confirmed the plan at issue and, after the plan's confirmation, granted the debtor's objection to the creditor's allowed claim, thereby reducing the secured claim for mortgage arrearage to the amount provided for in the confirmed plan, but denied the creditor's motion to dismiss the Chapter 13 bankruptcy. The district court affirmed the bankruptcy court. For the following reasons, we AFFIRM in part and REVERSE in part.

# I.  BACKGROUND

On 26 November 1996, Debtor-Appellee Carmen Bateman filed a Chapter 13 bankruptcy petition and confirmation plan in the United States Bankruptcy Court for the Southern District of Florida.  On 18 December 1996, Creditor-Appellant Universal American Mortgage Company ("Universal") timely filed proof of a secured claim, pursuant to 11 U.S.C. § 502, in the amount of $49,178.80.[1]  The claim was for arrearage on a first mortgage that was secured by Bateman's principal residence.  Bateman did not file an objection to Universal's proof of claim.  On 5 February 1997, the first creditors' meeting was held; Universal did not attend.  On 13 February 1997, Bateman filed an amended confirmation plan (the "Plan").  The initial plan and the amended plan both provided for payment to Universal of $21,600.00.  The confirmation hearing was set for 19 February 1997; Universal did not attend.

On 14 March 1997, the bankruptcy court entered the Confirmation Order, which contained the $21,600.00 amount to be paid to Universal over the course of

---

[1]  Universal filed the claim with the bankruptcy court file and did not serve the claim on the other parties.  Bateman would have us give credence to this fact, as did the bankruptcy court and the district court, to indicate that Universal was attempting to sidestep procedure and fair dealing.  Universal comported with the procedural requirements that existed in 1996; however, in December 1998, the local bankruptcy rules were amended to require service of a proof of claim on the parties, ostensibly to serve the interest of heightened communication between parties. M.D. Fla. Bankr. R. 3002-1(E).  At the time of the pendency of the Chapter 13 case, Universal was under no obligation other than to file the proof of claim, as it did.

the Chapter 13 plan. Universal did not at any time object to the Plan's confirmation. Universal did not appeal the Confirmation Order to the district court, even though the plan erroneously provided for the payment of the "disputed" amount contrary to its timely filed proof of claim.[2]

Over a year after the Plan was confirmed, the bankruptcy trustee noted that Universal's filed proof of claim did not match the Plan amount. The trustee contacted Bateman and thereafter, on 7 May 1998, Bateman filed an objection to Universal's proof of claim, to which Universal responded. On 13 July 1998, Universal filed a motion to dismiss the bankruptcy because the Plan failed to comply with the bankruptcy code.

The bankruptcy court sustained Bateman's objection and denied Universal's motion to dismiss, holding in part that "[a]s a matter of substance the Chapter 13 plan provided an objection to the claim which placed a duty on [Universal] to

---

[2] The Plan provision stated:
1.  Universal Amer. Mtg. Arrearage $21,600.00** thru Nov. 1996
. . .
**This figure is disputed.
        If CREDTIOR [sic] CAN SHOW THAT MORE THAN $21,600.00 IS IN ARREARS THEN Interest should be reset from 10.5% to 9% on the outstanding principal sum owing at the time the Petition in the bankruptcy was filed. A reduction in the interest rate on the promisory [sic] note does not modify rights under the mortgage. The reduction in interest is equitable and will allow debtor to obtain a second mortgage in the 60th month and pay off any arrears which have not been paid in full.

R1-2-B1; R1-2-B3; R1-2-B6.

pursue the matter if the $21,600.00 was not acceptable." R1-2-B20 at 2. Because Universal did not object to the Plan as confirmed, the bankruptcy court gave the Plan res judicata effect and found that Universal was bound to the $21,600.00 amount for its claim. In doing so, the bankruptcy observed that:

> "The binding effect on the confirmation order establishes the rights of the debtor and creditors as those which are provided in the plan. It is therefore incumbent upon creditors with notice of the Chapter 13 case to review the plan and object to the plan if they believe it to be improper, they may ignore the confirmation hearing only at their peril . . .
> . . . A creditor that had the opportunity to object that the plan did not meet the standards for confirmation, which provide the protections Congress deemed appropriate for the various types of creditors may not later assert any interest other than that provided for it by the confirmed plan."

Id. at 3 (quoting Collier on Bankruptcy, ¶ 1327.01[1][a] (15th rev. ed. 1993)).

Noting that Universal

> is a successful, organized, mortgage lender and servicer, it elected not to retain an attorney, filed its claim, ignored the Chapter 13 plan, corrected Chapter 13 plan, failed to attend the creditors meeting, the confirmation hearing, and had the right to timely proceed after the Order of Confirmation. Creditor[s,] especially lending institutions like the mortgagee, must follow the administration of the bankruptcy estate to determine what aspects of the proceeding that they may want to challenge.

Id. at 3-4.

The bankruptcy court held that Universal's

5

lien passes through the bankruptcy proceeding, however the amount of the arrearage is res judicata. Upon successful completion of the Chapter 13 plan or upon earlier payment of the arrears in the sum of $21,600.00, the mortgagees must as a matter of law provide that the mortgagor is current in her mortgage account. Her principal sum owed on the mortgage, the date the sum of $21,600.00 has been paid to the mortgagee must be the same as if no delinquency had ever occurred. The mortgagee may not seek at any future time to charge back against the debtor or any successor any portion of the difference between the $21,600.00 and the claimed amount of $49,178.80. The mortgagee waived its rights to contest the amount of the arrearage and is bound by the confirmed plan.

Id. at 4.

Universal filed a motion to reconsider, which the bankruptcy court denied. Universal appealed to the United States District Court for the Southern District of Florida, which affirmed the bankruptcy court on the basis that Universal was precluded from collaterally attacking the Plan, and was bound to the amount provided for in the Plan on the grounds of res judicata, because it failed to object previously to the Plan. Universal timely appealed the district court's order, which is now properly before us.

## II. DISCUSSION

Universal's appeal before us challenges, first, the bankruptcy court's sustainment of Bateman's objection and ruling that Universal was bound by the claim amount provided for in the Plan, despite the fact that Bateman did not file an objection to counter Universal's proof of claim prior to confirmation. Second,

6

Universal urges us to find error in the bankruptcy court's denial of Universal's motion to dismiss the bankruptcy because it did not comply with 11 U.S.C. § 1325, which it argues requires that a secured claim must be provided for in full as a prerequisite to plan confirmation. Thus, Universal seeks both to avoid the <u>res judicata</u> effect of the Plan's confirmation as to its claim and to unravel the bankruptcy altogether as invalidly confirmed. Bateman argues that the Plan is conclusive as to the treatment of Universal's claim and it cannot be dismissed for such treatment, whether improper or not, at this late stage when Universal neither objected to nor appealed from the Plan's confirmation. We deny both of Universal's requests, but nevertheless hold that Universal's secured claim for the mortgage arrearage remains intact.

This appeal pits the procedural requirements and substantive provisions of 11 U.S.C. §§ 502(a), 1322, and 1325 of the bankruptcy code, against the <u>res judicata</u> effect of a confirmed plan under 11 U.S.C. § 1327.[3] We now undertake

---

[3] Title 11, United States Code § 502(a) provides: "A claim or interested, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."

Section 1322 provides, in relevant part:

(b) Subject to subsections (a) and (c) of this section, the plan may –
. . .
    (2) modify the rights of holders of secured claims, <u>other than a claim secured only by a security interest in real property that is the debtor's principal residence</u> . . .;
. . .

to harmonize these provisions and decide an issue of first impression in this circuit.[4] "[D]eterminations of law, whether made by the bankruptcy court or by the

> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
>
> . . .
>
> (10) include any other appropriate provision not inconsistent with this title.

11 U.S.C. § 1322 (emphasis added).

> Title 11 United States Code § 1325 provides, in pertinent part:
>
> (a) Except as provided in subsection (b), the court shall confirm a plan if –
>    (1) the plan complies with the provisions of this chapter and with the applicable provisions of this title;
>    . . .
>    (3) the plan has been proposed in good faith and not by any means forbidden by law;
>    . . .
>    (5) with respect to each allowed secured claim provided for by the plan –
>       (A) the holder of such claim has accepted the plan;
>       (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>       (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
>       (C) the debtor surrenders the property securing such claim to such holder; and
>    (6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1325(a). Subsection (b) pertains to unsecured creditors' claims and is not pertinent to the facts here.

[4] Although Universal does not argue that the Plan did not conform to § 1322, which provides for the mandatory provisions of a confirmed plan, we will address the effect of § 1322(b)(2), prohibiting the modification of Universal's secured mortgage claim. As discussed infra, whether the Plan was confirmed in violation of § 1322 or § 1325 is irrelevant to the disposition of this case, because the res judicata effect of § 1327 prohibits the collateral attack of

8

district court, [are reviewed] <u>de</u> <u>novo</u>." <u>Equitable Life Assurance Soc'y v. Sublett</u> <u>(In re Sublett)</u>, 895 F.2d 1381, 1383 (11th Cir. 1990).

The issues before us present questions of statutory interpretation and evaluation of the interlocking nature of the bankruptcy code. Provisions within a statute are read to be consistent whenever possible. <u>See</u> <u>Clark v. Uebersee Finanz-Korporation</u>, 332 U.S. 480, 488, 68 S. Ct. 174, 178 (1947). If the two provisions may not be harmonized, then the more specific will control over the general. <u>Green v. Bock Laundry Mach. Co.</u>, 490 U.S. 504, 524, 109 S. Ct. 1981, 1992 (1989). With these principles in mind, we navigate the intricacies of the bankruptcy code and bankruptcy procedure to decide Universal's appeal and whether Universal's claim survived Bateman's confirmed Chapter 13 Plan.

Before we reach the issue whether the bankruptcy court properly granted Bateman's objection to Universal's proof of claim, we will review the confirmation and claims process to give the issue context in the bankruptcy law and procedure. In general terms, when a debtor initiates a Chapter 13 bankruptcy, he or she files a petition and, in many instances simultaneously, a proposed plan. The plan contains the treatment to be afforded each creditor, including whether and how much each is

---

a confirmed plan. <u>Stoll v. Gottlieb</u>, 305 U.S. 165, 172, 59 S. Ct. 134, 137-38 (1938). We decide this case within the context of the special treatment afforded mortgage lenders by § 1322(b)(2) and do not express an opinion as to the result with regard to a general secured creditor.

9

to receive during the course of the plan's term. During the petition's pendency, before a Chapter 13 plan is confirmed, debtor and creditor alike have an opportunity to file claims and litigate any dispute regarding the validity and the amount of such claims. See generally 11 U.S.C. § 501. This is facilitated through filings and scheduled conferences and hearings. Upon satisfaction of the plan and completion of the plan's term, the debtor is discharged of his or her debts and, in theory, faces a future of solvency. See 11 U.S.C. §1328. The general bankruptcy statutory provisions, 11 U.S.C. §§ 1 to 560, and the specifics of Chapter 13 (Debts of Individuals), 11 U.S.C. §§ 1301 to 1330, define the rights and duties of debtors and creditors, whereas the Federal Rules of Bankruptcy Procedure dictate how to navigate the process. Within this framework, the issue here requires us to harmonize these interrelated provisions.

## A. The Bankruptcy Court's Sustainment of Debtor's (Constructive) Objection

Title 11, United States Code § 1322 sets forth the mandatory contents of a Chapter 13 plan. Generally, the holder of a secured claim is entitled to protection under the bankruptcy code to the extent of the collateral's value securing the claim. 11 U.S.C. § 506(a). However, § 1322(b)(2) specially prohibits any modification of a homestead mortgagee's rights in the Chapter 13 plan. Because of the protection afforded to mortgagees by § 1322(b)(2), the protected security interest is not

compromised even if the interest is undersecured by the value of the property.

Nobleman v. Am. Savs. Bank, 508 U.S. 324, 339, 113 S. Ct. 2106, 2110 (1993).

Thus, even if the residential mortgage is undersecured, the plan is prohibited from

reducing the mortgagee's secured claim.[5]  "At first blush it seems somewhat

strange that the Bankruptcy Code should provide less protection to an individual's

interest in retaining possession of his or her home than of other assets.  The

anomaly is, however, explained by the legislative history indicating that favorable

treatment of residential mortgagees was intended to encourage the flow of capital

into the home lending market." Id. at 332, 113 S. Ct. at 2111-12 (Stevens, J.,

concurring).  "This is not to say, of course, that the contractual rights of a home

mortgage lender are unaffected by the mortgagor's Chapter 13 bankruptcy.  The

lender's power to enforce its rights – and, in particular, its right to foreclose on the

property in the event of default – is checked by the Bankruptcy Code's automatic

---

[5] Often a debtor will be in default under the mortgage prior to filing a Chapter 13 petition, resulting in a mortgagee's secured claim for arrearage.  Under 1322(b)(5), the debtor can "cure" such arrears of a mortgage without improperly "modifying" the secured creditor's rights in violation of § 1322(b)(2). In re Hoggle, 12 F.3d 1008, 1010 n.3 (11th Cir. 1994) (holding that a confirmed plan can be modified to cure pre- or post-petition defaults, so long as it meets the requirements of § 1322(b)(5)) (citing 5 Collier on Bankruptcy, ¶ 1322.09[1], at 1322-19 (15th rev. ed. 1993)).  The effect of 1322(b)(2) and (5) is to potentially split the treatment of mortgagee's secured claim by the plan - one secured claim for the mortgage going forward and one secured claim for the arrearage -  but it does not compromise the amount of the aggregate secured claim or the rights of the secured creditor to recover the arrearage. Nobleman, 508 U.S. at 331-32, 113 S. Ct. at 2111.

stay provision." Id. at 330, 113 S. Ct. at 2110 (citing 11 U.S.C. § 362); see also 11 U.S.C. § 1301.

Inclusion of creditors for disbursements under a Chapter 13 plan is not an automatic process. If the debtor wants to be discharged of certain liabilities, then the debtor must list the claim amounts and their proposed treatment under the plan. Correspondingly, if a creditor wants to ensure it will be provided for in the confirmed plan, it will file a proof of claim. 11 U.S.C. § 502. "Although the filing of a proof of claim may be a prerequisite to the allowance of certain claims, no creditor is required to file a proof of claim . . . [but one] should be filed only when some purpose would be served." Simmons v. Savell, 765 F.2d 547, 551 (5th Cir. 1985) (citations omitted). An unsecured creditor is required to file a proof claim for its claim to be allowed, but filing is not mandatory for a secured creditor. See Fed. R. Bankr. P. 3002(a). In fact, a secured creditor need not do anything during the course of the bankruptcy proceeding because it will always be able to look to the underlying collateral to satisfy its lien. In re Folendore, 862 F.2d 1537, 1539 (11th Cir. 1989) ("Because an unchallenged lien survives the discharge of the debtor in bankruptcy, a lienholder need not file a proof of claim under section 501."); see also Long v. Bullard, 117 U.S. 617, 620-21, 6 S. Ct. 917, 918 (1886)

(holding that a secured creditor can ignore a bankruptcy proceeding because it can always look to the lien to satisfy its claim).

If the secured creditor wants to receive payments under the confirmed plan, it must file the proof of claim in a timely manner. See In re Baldridge, 232 B.R. 394, 395-96 (Bankr. N.D. Ind. 1999). The debtor also has an interest in ensuring that a proof of claim is filed, if the secured creditor neglects to do so, because the debtor is the party seeking the protection of the bankruptcy court and the ultimate benefit of the discharge of his or her liabilities. Under § 502(a), "[a] claim or interest, proof of which is filed under section 501 of [Title 11], is deemed allowed, unless a party in interest . . . objects." A proof of claim filed pursuant to Federal Rule of Bankruptcy Procedure 3001 "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

The prima facie evidence of a proof claim can be rebutted if the debtor files an objection pursuant to Federal Rule of Bankruptcy Procedure 3007. If an objection is made as to the amount or validity of the claim, the bankruptcy court will conduct a hearing to determine such, and, if appropriate, will disallow the claim. 11 U.S.C. § 502(b). Although § 502(a) does not provide for a time limit to file an objection, it must be filed *prior to* plan confirmation. In re Justice Oaks II,

Ltd., 898 F.2d 1544, 1553 (11th Cir. 1990); In re Starling, 251 B.R. 908, 909-10 (Bankr. S.D. Fla. 2000).

Universal timely filed a proof of claim before the Plan's confirmation. Accordingly, unless Bateman, or any other party in interest, objected to the proof of claim, it is "deemed allowed" and is "prima facie evidence of the validity and amount" of the mortgage arrearage. § 502(a); Fed. R. Bankr. P. 3001(f). It is undisputed that Bateman did not file an objection to Universal's proof of claim prior to confirmation of the Plan. Instead, it was not until the trustee notified Bateman of the discrepancy between the Plan and Universal's proof of claim over one year after the Plan's confirmation that she filed an objection to Universal's proof of claim.[6]

The bankruptcy court decided ex post facto, however, that "[a]s a matter of substance the Chapter 13 plan provided an objection to the claim which placed a duty on the mortgagee to pursue the matter if the $21,600.00 was not acceptable."

---

[6] We will not lecture on the various roles and responsibilities delegated to and required of each party in interest participating in a Chapter 13 plan confirmation; however, we deem it necessary to urge all parties to carefully execute their responsibilities such that every confirmed plan will result in a synthesis of the interests of all participants in a consistent manner. The interest of one party is not to the exclusion of all others; rather, every party, most importantly the debtor who is seeking the protection of the bankruptcy court, benefits from a confirmed plan that includes accurate and thorough treatment of all claims. Moreover, it is the independent duty of the bankruptcy court to ensure that the proposed plan comports with the requirements of the bankruptcy code. See In re Gurst, 76 B.R 985, 989 (Bankr. E.D. Pa. 1987); In re Harris, 62 B.R. 391, 393 n.1 (Bankr. E.D. Mich. 1986); In re Bowles, 48 B.R. 502, 505 (Bankr. E.D. Va. 1985).

R1-2-B20 at 2. We disagree. See In re White, 908 F.2d 691, 694-95 (11th Cir. 1990) (per curiam) (refusing to permit a bankruptcy court to determine the validity of a lien in connection with fixing valuation for purposes of confirmation when it did not follow procedure pursuant to Rule 3007).

Universal properly filed its proof of claim. In fact, because Universal has a secured claim, that act was not even necessary or required. Indeed, Universal decided that it would pursue treatment under the plan for its secured claim for arrearage, therefore, it filed the proof of claim. Universal was not the only party with an interest in ensuring that a proof of claim was filed and provided for in the Plan. Bateman had every incentive to provide for the secured mortgage claim in her Chapter 13 plan; otherwise, the claim would have survived beyond the confirmed plan and the debtor would no longer have enjoyed the protection afforded by the automatic stay and periodic payments, and could possibly face foreclosure on her property. If Bateman disagreed with the amount of the claim, Rule 3007 provided the procedures by which she could resolve the dispute.

Bateman failed to file a timely objection and the amount in Universal's proof of claim was "deemed allowed" under § 502. Instead, she listed a lower amount as "disputed" on her proposed plan, without more, and the Plan passed through the confirmation process uncorrected. Given the "deemed allowed"

15

language of § 502, the explicit procedures set forth in Rule 3007 to effect a proper disallowance, the existence of a secured home mortgage claim, and the failure by the debtor here, not the creditor, to follow the proper procedures, we refuse to permit an inconsistent plan provision to constitute a constructive objection by reason of the Plan's notation of dispute alone, especially where a bankruptcy court does not consider an objection until over a year after the Plan's confirmation. See In re Starling, 251 B.R. at 910 ("To allow the Debtor to object, months after the plan has been confirmed, would contradict the 'finality' objective of the confirmation process and would overlook the express language of section 1327(a) of the Bankruptcy Code."). That the Plan states an amount in conflict with the proof of claim demands a resolution of the inconsistency, but a debtor's post-confirmation objection is not the appropriate vehicle by which to do so. Because the bankruptcy court granted this objection and held that Universal was bound to the amount provided in the Plan and, in addition, that Universal would not be permitted to recoup the balance of the mortgage arrearage, the district court's affirmance of its ruling in this regard is REVERSED.

## B. The Bankruptcy Court's Denial of Universal's Motion to Dismiss

Section 1325(a) requires the bankruptcy judge to confirm a plan if it meets certain requirements, one of which is that the proposed plan conforms with the

requirements of Chapter 13 and the applicable provisions of Title 11. § 1325(a)(1).

According to the plain statutory language, § 1322 is a mandatory provision contemplated by § 1325(a)(1) and the confirmed plan should comply with it. Section 1325(a)(5), in turn, references secured creditors and mandates plan confirmation if (1) the secured creditor accepts the plan; (2) the plan provides that the secured creditor retain its lien and be paid the full amount of the allowed claim; or (3) the debtor surrenders the property securing the claim to the creditor. Thus, there are three options to the treatment of a secured creditor's claim that compel confirmation of a plan, none of which were present in the facts here. First, Universal, by filing a proof of claim contrary to the amount indicated in Bateman's first plan, did not indicate its acceptance of the plan to the detriment of its lien by declining to further participate in the confirmation proceedings. Confirmation would have been proper under § 1325(a) if Universal conceded to the treatment of its claim under the Plan. Universal did not accept the Plan, however; rather, after receiving the first plan, it filed a proof of claim with a different, higher amount. Because there was no objection to the proof of claim, Universal did not need to act further and the claim was "deemed allowed." We will not permit Universal's reliance on the terms of the bankruptcy code, and Universal's subsequent silence on the matter, to act as an acceptance under § 1325(a). There is no indication that Universal accepted the Plan and we will not treat its actions as comprising such. It

17

is also undisputed that neither Universal was provided for in full pursuant to its allowed claim and § 1325(a)(5)(B), nor was the property surrendered to it. Accordingly, Bateman cannot claim that the Plan's confirmation was proper at the outset or was entitled to confirmation because it did not meet the mandatory provisions of § 1322 and Universal did not accept, nor was it alternatively sufficiently provided for, under § 1325(a)(5).[7]

Universal argues that because the Plan did not meet the requisites of § 1325, which it maintains are mandatory for confirmation, the Plan cannot be afforded res judicata effect under § 1327. Title 11, U.S.C. § 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Thus, § 1327 gives res judicata effect to a confirmed Chapter 13 plan. A leading treatise makes clear

> that the binding effect . . . extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation

---

[7] The parties dispute whether the provisions of § 1325 are mandatory to an extent that would warrant vacating a confirmed plan and dismissing the bankruptcy. Compare In re Szostek, 886 F.2d 1405, 1411 (3d Cir. 1989) (holding that § 1325(a) is not mandatory, but rather "sufficient," whereas § 1322 is mandatory) with In re Nenonen, 232 B.R. 803, 805 (M.D. Fla. 1998) (nothing that § 1325(a) provisions are mandatory in the context of a direct appeal from a confirmation order). This question, however, appears to be settled by Associates Commerical Corp. v Rash, 520 U.S. 953, 956, 117 S. Ct. 1879, 1882 (1997): "To qualify for confirmation under Chapter 13, the [debtors'] plan had to satisfy the requirements set forth in § 1325(a) of the Code." Because our decision rests on a different ground, we do not decide that issue.

18

order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code. For example, a creditor may not after confirmation assert that the plan . . . is otherwise inconsistent with the Code in violation of section 1322(b)(10) or section 1325(a)(1).

8 Collier on Bankruptcy, ¶ 1327.02[1][c] at 1327-5 (15th rev. ed. 2003) (footnotes omitted).

We set forth in In re Justice Oaks II, Ltd., and reiterate here, that res judicata refers to "claim preclusion" in the sense Bateman seeks to apply the doctrine, meaning, "[i]f the later litigation arises from the same cause of action, then the judgment bars litigation not only of 'every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented.'" 898 F.2d 1544, 1549 n.3 (11th Cir. 1990) (quoting Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 319, 47 S. Ct. 600, 602 (1927)). "Preclusion under § 1327 is somewhat harsher than common law issue preclusion, however. At common law the litigation of an issue is precluded only if that issue was actually litigated and decided and if the determination of that issue was necessary to the judgment in a previous action between the parties." In re Starling, 251 B.R. at 910 n.2 (quoting In re Sanders, 243 B.R. 326, 328 (Bankr. N.D. Ohio 2000)). Confirmation of a Chapter 13 plan by a bankruptcy court of competent jurisdiction, in accordance with the procedural requirements of notice and hearing of confirmation, "is given the same effect as any district court's final judgment on the

19

merits." In re Justice Oaks II, Ltd., 898 F.2d at 1550 (citing Stoll v. Gottlieb, 305 U.S. 165, 170-71, 59 S. Ct. 134, 137 (1938)).[8] Universal's proof of claim and the Plan's listed distribution amount, however improper, was within the definition of claim preclusion because it very well might have been and, as we have articulated should have been, presented before the bankruptcy judge prior to the Plan confirmation. See In re Starling, 251 B.R. at 910. The Plan was improperly confirmed because it conflicted with § 1322's mandatory provisions. Had Universal objected to or appealed from the Plan's confirmation, it would have prevailed without question, given the facts presented to us. Universal, however, did not do so and § 1327 binds creditors to the provisions of the Plan. The Plan provided that Universal be paid monthly a certain amount to fulfill the "disputed" claim. Universal cannot now, years later, urge us to dismiss the Chapter 13 petition and unravel the Plan's execution when it otherwise retains its lien in full.

We are persuaded by the reasoning in Simmons that a secured creditor's lien survives a contrary plan confirmation. 765 F.2d at 559. In Simmons, the creditor secured by a statutory construction lien filed a proof of claim with the bankruptcy court. During the course of the confirmation proceedings, neither the debtor nor the trustee objected to the proof of claim prior to confirmation. Nevertheless, the

---

[8] Although In re Justice Oaks II, Ltd. applied to a Chapter 11 bankruptcy case, in In re Clark, 172 B.R. 701, 704 (Bankr. S.D. Ga. 1994), the court applied In re Justice Oaks in the Chapter 13 context. We also find it appropriate to do so here.

Chapter 13 plan listed the creditor's claim as unsecured but disputed. The Fifth

Circuit held that the notation in the confirmation plan "cannot be deemed to

constitute . . . an objection." Id. at 552 ("The purpose of filing an objection is to

join issue in a contested matter, thereby placing the parties on notice that litigation

is required to resolve an actual dispute between the parties."). The court stated that

the plan was erroneously confirmed by the bankruptcy court because, not only did

it not appropriately provide for the creditor's proof of claim, the plan did not meet

any of the prerequisites under § 1325(a)(5) in that the secured creditor did not

accept the plan, the plan made no provision that it retained its lien, and the plan did

not propose the surrender of the property.[9] Id. at 554.

The debtor argued that the effect of the confirmation was to lift the

construction lien from the homestead and vest the interest of the property in the

debtor "free and clear of any 'claim or interest' of any creditor." Id. at 555. The

Fifth Circuit declined that invitation:

> After delineating the parameters of the dispute over the meaning of
> the terms "claim or interest," and having observed that the legislative
> history of section 1327(c) offers no insight regarding this issue, a
> leading commentator writes that "[m]atters are further confused by the
> fact that there appears to be no sound reason for lifting liens by
> operation of law at confirmation under chapter 13." 5 Collier on
> Bankruptcy ¶ 1327.01 [3], at 1327-5. Nor are we able to discern any

---

[9] The issue was not addressed under § 1322(b)(2) because the secured claim was not a mortgage on a principal residence. The mandatory language of § 1322 makes the analogous result in Simmons even more compelling.

21

reason for such an effect. Therefore, we agree with the In re Honaker[, 4 B.R. 415 (Bankr. E.D. Mich. 1980),] court's conclusion that "[t]he reading of Section 1327 urged by [the debtor] would have the Debtor materially improve his financial position, by unencumbering [secured] assets, through the simple expedient of passing his property through the estate. This result has little to recommend it." [Id.] at 417. . . *It would be anomalous indeed were we to permit [the debtor] a windfall for his mischaracterization of [the creditor's] claim in the plan . . . .*

Id. at 555-56 (emphasis added). Furthermore, the creditor's

failure to interpose an objection to the plan or to appeal the confirmation order should not now be permitted to justify avoidance of a lien securing a claim that was originally deemed an allowed secured claim as a result of [the debtor's] failure to object to [the creditor's] timely filed proof of secured claim.

Id. at 556. Rejecting the debtor's argument that § 1327 bound the creditor to the treatment of his claim as provided for in the confirmation plan, the Fifth Circuit held that the creditor's statutory lien on the debtor's homestead "remained unimpaired by the order of confirmation." Id. at 559. Thus, while the validity of the confirmation order itself was not before the court on appeal, the court held that the effect of confirmation under § 1327 did not invalidate the creditor's lien.

For these reasons, if a lien on a mortgage survives the § 1327 res judicata effect of a confirmed plan, then so must any corresponding arrearage claim, such as one Universal asserts here. See In re Hobdy, 130 B.R. 318, 322 (Bankr. App. 9th Cir. 1991) (holding, in an identical fact situation, that the general terms of § 1327(a) could not override the specific § 502(a) claims provision, therefore, the

22

confirmed plan was "fatally defective" and could not reduce the arrearage claim).

In re Hobdy is especially instructive to the statutory conflict we face here:

> [T]he plan that was confirmed here was fatally defective in its arbitrary reduction of [the creditor's] secured arrearage claim. We do not believe the need for finality of confirmed plans extends to circumstances present in this case: where a debtor misuses, whether or not intentionally, the plan confirmation process to reduce a valid claim without the requisite notice and opportunity to be heard. In any event, § 502(a) is the statutory provision which specifically governs questions of claims allowance and, consequently, should control over the more general policy considerations embodied in § 1327(a).

130 B.R. at 321 (referring to the lack of due process afforded the creditor because it did not have notice of the objection to its proof of claim). The concurrence interpreted § 1327(a) to bind the parties to the distribution amount under the plan, but not the amount of the claim determined by § 502(a). Id. at 322. Thus, the debtor could not satisfy the lien until the entire claim amount was paid, whether pursuant to the plan or otherwise. Id. The concurrence relied, in part, on the language of § 1322(b)(10) which, by implication, prohibits the confirmation of a plan inconsistent with Title 11 - one such inconsistency being "for a plan to effectively determine the amount of a secured claim," a result inconsistent with § 502(a) and Rule 3007. Id. at 322. Both the majority and the concurring judges agreed that a proof of claim pursuant to § 502(a) controlled the amount of the creditor's allowed claim, even if the plan amount differed, and held that the plan could not reduce an arrearage claim.

23

The facts here compel an identical result: Universal's secured claim is unaffected by the Plan and survives the bankruptcy unimpaired.[10] See In re Thomas, 883 F.2d 991, 997 (11th Cir. 1989) (holding that a secured creditor's lien survived a Chapter 13 discharge even though it had not been provided for in the plan and the secured creditor had not filed a proof of claim).

Nevertheless, because the plan was invalid at the point of its completion, we are urged by Universal to dismiss the Chapter 13 petition. Universal argues that the bankruptcy court erred by denying its motion to dismiss the Chapter 13 Plan because the Plan failed to comply with § 1325 of the bankruptcy code. Bateman argues that the denial was proper because the Plan, as confirmed, is res judicata

---

[10] Bateman refers us to the decision in In re Duggins, 263 B.R. 233 (Bankr. C.D. Ill. 2001), in support of its argument that the Plan, as confirmed, is res judicata, and therefore, established Universal's claim at the $21,600.00 amount. The bankruptcy court in In re Duggins held that an undersecured creditor was bound to the confirmed plan's valuation of the underlying collateral, even though it filed a proof of claim evidencing a higher valuation just before the plan's confirmation, because the creditor had adequate notice of the plan's valuation of the collateral, and the proof of claim would not be permitted to substitute for a timely objection to the confirmation plan. Id. at 244.

The case In re Duggins is distinguishable in terms fatal to Bateman's argument. First, the secured claim in In re Duggins was for a television set, id. at 235, which is not afforded the same protection as a mortgage on a principal residence by § 1322(b)(2). Thus, the secured claim was bifurcated pursuant to § 506(a) and secured only to the extent of the collateral's value; the remainder was relegated to unsecured status. Id. at 236 (citing Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 117 S. Ct. 1879 (1997)). Section 1322(b)(2) prohibits such treatment of mortgages on principal residences. Second, the dispute centered around the valuation of the collateral, not the amount of the claim itself. The bankruptcy court concluded that the claims process did not assign to a collateral valuation the same evidentiary effect of a proof of claim as to the amount of the claim itself. Id. at 238. The collateral's valuation was better determined in the confirmation process, and therefore the creditor was bound by the plan's valuation. Id. Because of these distinctions, we do not find the language in In re Duggins to be applicable to the issue before us.

pursuant to § 1327(a) and Universal does not make any allegations of fraud, which is the only basis to revoke a confirmed plan under § 1330(a).[11]   Although Universal's lien and arrearage claim survives, we will not reverse the district court's order affirming the bankruptcy court's order denying Universal's motion to dismiss the bankruptcy altogether.

Universal had the opportunity to object to the Plan's treatment of its claim at the confirmation hearing or appeal the confirmed plan and, had it done so, the Plan could not have been properly confirmed over its objection. See § 1325.  Universal, albeit within its rights, filed a proof of claim to be provided for by the Plan, yet, chose not to involve itself in the Chapter 13 proceedings and bypassed these opportunities to correct the discrepancy before the Plan was confirmed. Furthermore, Universal continued to accept the payments even though it should have been apparent that they were less than adequate to satisfy its arrearage claim. Universal arguably had reason to remain disengaged from the proceedings because it assumed its properly filed proof of claim was sufficient to protect its interests absent a notice of objection by Bateman.  Because it did not vindicate its rights at the appropriate stages of the Chapter 13 process, however, Universal cannot now

---

[11]  Section 1330(a) provides:  "On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation . . . the court may revoke such order if such order was procured by fraud."  Universal does not argue the presence of fraud. Accordingly, revocation of the order of confirmation is not permitted under this section. Furthermore, the motion to dismiss was filed well in excess of 180 days after confirmation.

argue for a dismissal of the petition at its near conclusion without assuming some responsibility for letting the discrepancy go this far unchallenged. Accordingly, we decline to unravel three years of diligent execution of the Plan to correct a discrepancy that every party in interest --- Bateman, Universal, the trustee, and even the bankruptcy judge --- should have noticed and rectified before the Plan was confirmed. Were we to do so, the prejudice afforded Bateman and the other parties in interest would far exceed the possible benefit to Universal at this juncture. This is so, for the most part because, going forward from the conclusion of the plan, Universal retains its secured claim for the arrearage. Bateman will not benefit from a windfall from a plan that should not have been confirmed in the first place. Because we decide that Universal's claim is unimpaired under the confirmed plan, it is not inequitable and is, in fact, synchronous to give the Plan its full intended res judicata effect under § 1327. Also, in pragmatic terms, this action would be disastrous to Bateman and her pursuit of financial solvency and would afford Universal little more in remedial terms than it already possesses by nature of its secured claim under § 1322. Moreover, although Universal was not required to "show up" at the Chapter 13 confirmation proceedings or file the proof of claim for its secured claim, it did inject itself into the proceedings by seeking payment under the Plan to satisfy its secured claim for arrearage, as it was entitled to do. By electing to do so, Universal assumed some level of responsibility for ensuring that

26

the Plan accounted for its claim in full, or at least objecting to or appealing from the confirmation if it did not. By failing to do so, Universal "ignore[d] the confirmation hearing only at [its] peril." 8 Collier on Bankruptcy ¶ 1327.02[1][a] at 1327-4 (15th rev. ed. 2003). The extent of that peril, however, demands clear definition within the terms of the bankruptcy provisions, as discussed <u>supra</u>. Accordingly, the district court's order affirming the bankruptcy court's denial of Universal's motion to dismiss is AFFIRMED.

However, to the extent that Universal had any rights to act against Bateman pursuant to the terms of the mortgage, it retains those rights despite the terms of the Plan. See <u>Cen-Pen Corp. v. Hanson</u>, 58 F.3d 89, 92-93 (4th Cir. 1995) (citing <u>In re Honaker</u>, 4 B.R. 415, 417 (Bankr. E.D. Mich. 1980)) (refusing to permit a debtor, by "[t]he simple expedient of passing their residence through the bankruptcy estate," to enjoy a "greater interest in the residence than they enjoyed prior to filing their Chapter 13 petition.").[12]

---

[12] We stated in <u>In re Thomas</u> that, although the lien survived, the creditor "lost its right to recover any deficiency it may have from the estate or from the debtors." 883 F.2d at 997 (citing, inter alia, <u>In re Burrell</u>, 85 B.R. 799, 800-01 (Bankr. N.D. Ill. 1988)). <u>In re Thomas</u> involved a secured interest on a mobile home which is not real property and not subject to the anti-modification provision of § 1322(b)(2). 8 Collier on Bankruptcy, ¶ 1322.06[1][a][ii] at 1322-24.1 (15th rev. ed. 2003). Thus, the language in <u>In re Thomas</u>, does not apply here. We also take this opportunity to distinguish <u>In re Tepper</u>, 279 B.R. 859 (Bankr. M.D. Fla. 2002), which held that a secured claim for a tax lien as modified under a confirmed plan binds the secured creditor to the treatment afforded under the plan. <u>Id.</u> at 864. Based upon the language of § 1322(b), which prohibits the modification of a mortgagee's interest, we will not extend the reasoning in <u>In re Tepper</u> to enable a discharge resulting from an explicitly prohibited modification.

## III. CONCLUSION

We hold that although the parties are bound to the terms of the Plan, as confirmed, Universal's secured claim for arrearage survives the Plan and it retains its rights under the mortgage until Universal's claim is satisfied in full. If that satisfaction is not forthcoming, after the automatic stay is lifted, Universal will be entitled to act in accordance with the rights as provided in the mortgage to satisfy its claim. Accordingly, the district court's affirmance of the bankruptcy court's order granting Bateman's objection is REVERSED. The district court's affirmance of the bankruptcy court's denial of Universal's motion to dismiss is AFFIRMED because Universal cannot collaterally attack the Plan and is bound by its terms pursuant to § 1327.

AFFIRMED in part and REVERSED in part.